## Case No. 2,097.
### BUCKNAM v. GOSS.
[1 Hask. 630;[1] 13 N. B. R. 337.]
District Court, D. Maine. Dec., 1877.

BANKRUPTCY — FRAUDULENT AND PROHIBITED TRANSFERS.

1. A mortgage given by a bankrupt within four months of his bankrupt proceedings to secure a note given at the same time in payment of a pre-existing debt and for a present loan intended to be used in giving others a fraudulent preference, when the mortgagee intended a preference and the mortgagor had knowledge of his insolvency and of the intended unlawful use of the present loan, none of which came to the hands of the assignee either directly or indirectly, is fraudulent and void, both under the bankrupt act of 1867 and the act of 1874 amendatory thereof.

[Cited in Robinson v. Tuttle, Case No. 11,968; Corbett v. Woodward, Id. 3,223.]

2. Such knowledge of the mortgagee may be inferred from facts proved.

3. Such mortgage of all the real estate of the bankrupt, less in value than the mortgage debt, was not given in the ordinary course of business, and under section 5130, Rev. St., is prima facie fraudulent.

In equity. Bill by [Josiah A. Bucknam] an assignee of [Daniel M. Goss] a bankrupt against [Abial Goss] his mortgagee to annul a mortgage given in fraud of the bankrupt act. The mortgagee by answer, denied all fraud, and all knowledge of the mortgageor's insolvency, and insisted that the mortgage was given part to secure a present loan, and in any event as to that was valid. Proofs were taken.

Mr. Putnam, for complainant.
David Dunn, for respondents.

FOX, District Judge. An involuntary petition was filed against Daniel M. Goss, May 14, 1874, and he was adjudged bankrupt June 1, 1874; the complainant was appointed assignee, and has brought this bill against Abial Goss, an uncle of the bankrupt, praying that a mortgage on certain real estate at Mechanics' Falls, given to said Abial by the bankrupt, on the 6th day of April, 1874, to secure the sum of two thousand five hundred dollars, may be declared fraudulent and void, and that he may be required to release and surrender said mortgage, and be enjoined from making any claim under the same. It appears that the bankrupt went into business as a trader, at Mechanics' Falls, in 1871, making most of his purchases in Portland. He was also collector of taxes for the town of Minot, and appropriated to his own use some portions

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

of the sums collected by him in that capacity. At the time of the filing of the petition against him, he was indebted over eight thousand dollars, and. was not possessed of any visible property. having, a short time before, disposed of the balance of his stock in trade for twelve hundred dollars, which he applied towards his liability as collector of taxes. His real estate was encumbered by two mortgages, prior to that given to the respondent, in all, probably, for more than the full value of the property, so that nothing of any amount remained, subject to the claims of his general creditors.

Abial Goss was formerly a merchant in Boston, but retired from business and resides at Cambridge, Massachusetts. On the 1st day of April, 1871, he loaned the bankrupt fifteen hundred dollars, secured by a mortgage upon certain real estate in Oxford county. Upon this debt, but six months' interest had been paid prior to April 6, 1874. The buildings upon the Oxford estate were destroyed by fire, and the insurance was received by the bankrupt, and also a small amount of money from the sale of a portion of that estate. The residue of the Oxford property, it was agreed by the parties on the 6th of April, 1874, that Abial Goss should take at four hundred dollars, in part payment of his claim, and after crediting that sum, there was due from the bankrupt thirteen hundred and ninety-five dollars or thereabouts. Abial had repeatedly, before April 6th, 1874, written to the bankrupt, urgently demanding his interest. The bankrupt always promised to pay the same, sometimes fixing a definite time at which it should be paid, but he always failed to comply with his promises. On the 2d of April, 1874, the bankrupt telegraphed to Abial "that he wanted him to come down on important business," and on the 3d, he wrote him a letter of similar import, urging him to come at once. He accordingly came to Mechanics' Falls, the bankrupt being very lame and unable to travel, and he then represented to Abial that he had spent a portion of the amount he had collected for taxes, and his bondsmen were called on for the amount, and he wished to obtain from his uncle a further loan to discharge this claim. It was finally agreed, that a new mortgage on the property at Mechanics' Falls should be executed for two thousand five hundred dollars, thirteen hundred and ninety-five dollars of which amount was the sum and interest thereon, already loaned to Daniel, and the balance, eleven hundred and five dollars, was to be subsequently advanced to Daniel by Abial. The respondent, as well as the bankrupt and his wife, all testify that this sum was afterwards paid over to Daniel by Abial, in two different amounts. five hundred dollars at one time, and the balance subsequently; certain letters from Daniel to Abial are produced in evidence, which tend to show that no portion of this eleven hundred and

five dollars was paid prior to April 15, as there is produced a very urgent letter from Daniel to Abial of that date, asking for the sum of five hundred dollars, he having on the 10th of April written him a letter in which he says: "If you will send me five hundred dollars, as we talked, I will pay you when I agreed to, and I can raise the balance to pay the town." Abial now exhibits two receipts, signed by Daniel, one bearing date April 6th, for five hundred dollars, the other for six hundred and five dollars, dated April 18th. The court is well satisfied that nothing was paid on April 6th, as Daniel and his wife both testify that Abial brought no money at that time, and that the first payment was six or ten days after that time, the receipt is therefore false as to its date, and as the letters of Daniel on the 10th and 15th are pressing in their calls for a like sum, five hundred dollars, "as they had talked," and not six hundred and five dollars, the balance that would remain to be paid by Abial, if five hundred dollars had been previously advanced, it must have been after April 15th instead of April 6th that this sum of five hundred dollars was paid,—if it ever was advanced by Abial. He testifies in his first deposition, that on April 6th, 1874, he let Daniel have the five hundred dollars, and "I then took from him the receipt of which I append a copy." This statement is proved to be untrue, and no reliance can be placed upon it.

Daniel has been inquired of as to what disposition was made by him of the eleven hundred dollars, but gives no satisfactory explanation in relation to it. He admits that none of it was paid on account of taxes, as he falsely pretended to his uncle he intended to apply it, and upon the whole evidence, notwithstanding the positive statements of three witnesses that it was paid, I have serious doubts whether more than five hundred dollars was paid to Daniel by Abial after April 6th, and I am quite sure, if it was paid, it was never applied by Daniel to the discharge of his honest liabilities. In the view which the court takes of the present case, it is not necessary for me to determine this point, because, conceding the payment of the eleven hundred and five dollars to have been made by Abial to Daniel, I am of opinion that this mortgage cannot be sustained. It is also unnecessary for the court to determine whether the rights of the parties are to be governed by the original provisions found in the bankrupt act [March 2, 1867; 14 Stat. 534], which hold a party chargeable with obtaining a fraudulent preference, "if he had reasonable cause to believe that the debtor was insolvent, and that the conveyance was in fraud of the act," or whether they are controlled by the amendatory act of June, 1874 [18 Stat. 178]. by which the party is required to have had knowledge of the debtor's insolvency. in order to defeat his security, as I am of the opinion that the

evidence in the present case establishes all that is requisite to bring this mortgage within the requirements of the amendatory act. The 35th section of the original act provided "that if the conveyance was not made in the ordinary course of business of the debtors, this fact shall be evidence of fraud," and it was ruled by Mr. Justice Clifford, in Scammon v. Cole [Case 12,432], that this provision is alike applicable to preferences under the first clause of the section, as it is to sales under the latter clause. Section 5130 of the Revised Statutes in terms declares, that whether the conveyance is by way of preference or sale, if it is not made in the usual and ordinary course of business of the debtor, the same shall be prima facie evidence of fraud.

The insolvency of the bankrupt on the 6th of April is expressly charged in the bill, is not denied in the answer, and is fully shown by the testimony, but the respondent avers that he had no knowledge of it at that time. What then are the facts admitted by him to have been within his knowledge on that date, which bear upon this question of the insolvency of Daniel? It is proved that Daniel borrowed of Abial fifteen hundred dollars, April 1, 1871, at seven and three-tenths per cent. interest, upon which only six months' interest had been paid, and that at the giving of the note; that the buildings on those premises had been destroyed by fire, and Daniel had received the insurance money, and also the amount paid by a purchaser of a portion of the mortgaged premises; that Abial had urgently and repeatedly called upon Daniel to pay his interest, and although strong professions of his intent so to do were constantly manifested by him, yet that nothing ever resulted therefrom, and nothing further was ever paid. That in April, 1874, by letter and telegram, Abial was pressed by urgent appeals from Daniel to meet him at Minot, on matters of importance, and when there, it was disclosed to him by Daniel that he was in default as tax collector, and that his bondsmen were pressing for relief from their liability,—and it was quite apparent, that for this ostensible purpose, a loan was required, and although it is true that the bankrupt deceived Abial, and did not apply the amount which he may have received to the alleged payment of his liability as collector, but discharged that by a sale of his stock, and paying to his bondsmen the amount he received from this sale, still it is quite evident that these facts, his long-standing debt to Abial, and his delinquency as collector, were within the knowledge of Abial before the execution of the mortgage, and were sufficient to charge any person of ordinary intelligence with knowledge of the debtor's insolvency. In my opinion, no part of the eleven hundred and five dollars was paid prior to April 15, by Abial to Daniel. In a letter from Daniel to Abial of that date, he states "that his Port-

land creditors have given him an extension for four months," thus most directly and explicitly notifying Abial of his inability to meet his business payments as they fell due, which is insolvency within the meaning of the bankrupt act, and this notice was before any advances were made by Abial on the credit of this mortgage. Besides, a mortgage to secure demands of this nature, upon all the real estate of the bankrupt, and for more than its full value, as in his schedules he returns it as of the value of four thousand dollars, was certainly not in the ordinary course of the debtor's business, as is held, in Pearson v. Goodwin, 91 Mass. [9 Allen] 482, and [Tiffany v. Boatman's Inst.] 18 Wall. [85 U. S.] 387, and is by the bankrupt act, therefore, prima facie evidence of fraud. The respondent claims that the bankrupt orally and by letter, represented that he was doing a good business, and that his Portland creditors were ready to trust him for further purchases, and that he did not intend to fail but expected to continue in business, and it further appears that he also represented to the respondent "that the extent of his liabilities, including what he owed as collector, were from seven hundred to eight hundred dollars only." This latter statement is shown to have been a willful falsehood, as at that time he was indebted to his Portland creditors alone, more than two thousand two hundred dollars, and the court has not credulity enough to believe that the bankrupt was not, at that time, well aware of that fact. From the facts and circumstances, the court cannot but draw the conclusion, that on the 6th day of April, 1874, the bankrupt was mindful of his pecuniary condition, and that he intended to discharge his liabilities as collector of taxes, securing the respondent for what he might be owing him, and leaving nothing whatever for the payment of his other creditors. With the knowledge of these facts in relation to Daniel's liabilities, and of his misconduct as tax collector, which Abial then had, being thus advised of his insolvency, and that a mortgage taken under such circumstances would be prima facie fraudulent and void, the court cannot sanction his reliance on the false statement of the bankrupt as to his condition, good credit, and standing, especially as his dealing with the funds of the town had shown his dishonesty. He should, before taking this security, have made further inquiries, and ascertained for himself, from others, the amount of Daniel's indebtment, his assets and liabilities, and the slightest inquiry would have demonstrated his utter insolvency.

I am therefore compelled to the conclusion that this mortgage was a fraudulent preference, within the meaning of the bankrupt law, certainly to the extent of the prior indebtedness, and it must, therefore, to that extent at least, be held invalid as against

the assignee. This amount was included in and formed a portion of the note then received by Abial of Daniel, the whole constituting but one contract or obligation, and secured by one mortgage. But a portion of the consideration of this note was, it is claimed, a new and present indebtment, being a new loan for eleven hundred and five dollars, and the question arises whether there can be such an apportionment of the note and mortgage, as to sanction it in part as security for this amount. This precise question was presented to the supreme court of Massachusetts, in Denny v. Dana, 56 Mass. [2 Cush.] 161, and it was there held that a mortgage of personal property, which as to some portion of the debt thereby secured is in contravention of the insolvent laws, is wholly void. The same principle is reaffirmed in [Crafts v. Belden] 99 Mass. 539. If these decisions are to be received as correct, and if any part of the purpose of the sale or conveyance was fraudulent under the bankrupt law, that the whole was void, is the rule of law, of course the entire mortgage fails in the present case, and the respondent cannot derive any benefit therefrom, notwithstanding a portion of the debt secured thereby, was a present loan at the execution of the mortgage. I must confess that this rule does not, in all cases in bankruptcy which may occur, commend itself entirely to my judgment. If the entire new loan, made at the execution of the mortgage, has, either directly or indirectly by the property acquired thereby, come to the possession of the assignee, and the estate in bankruptcy is increased thereby, to the full extent of the loan, so that no detriment has been sustained in that behalf, it would seem to be only equitable that if the estate in bankruptcy has thus received such an advantage from the loan, it should also bear the burden, and the assignee should not be at liberty to avoid the security therefor. But such is not the present case. No portion of this eleven hundred and five dollars has come to the assignee, either directly or indirectly. This amount, if advanced at all, was advanced for the purpose of paying and discharging the bankrupt's liabilities as collector. A preference was thereby designed and intended to be given to the bondsmen of the bankrupt, and to secure and indemnify them from their liability as his sureties on his official bond. Abial Goss well knew that such was the avowed purpose of Daniel, and he intended to aid him to the extent of this loan, in accomplishing this purpose, which was clearly fraudulent under the bankrupt law.

Whether the sureties on the bond could or could not be made to refund the payment, if they had been thereby discharged from their liability, is not the question now to be determined, but it is, whether the mortgagee, by making this loan for the avowed purpose of discharging prior outstanding liabilities of the debtor to third parties, was not so far guilty of aiding in a fraud upon the bankrupt law, that his security therefor, although taken at · the time, is void. Judge Lowell, in Re Butler [Case No. 9,418], has examined this identical question, and I concur with him in his opinion that such a conveyance is invalid. If invalid, when such is the entire purpose and consideration of a mortgage, of course such a claim, when included in and part of a note and mortgage, otherwise fraudulent and void, can find no aid or support from such fraudulent conveyance. The whole is in all respects affected with and burdened by a purpose and intent of all parties, in fraud of the bankrupt law, and it becomes the duty of the court to adjudge the entire mortgage as wholly inoperative and invalid against the assignee in bankruptcy. Decree for complainant.